UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER LEE TORMEY,** | § § § | |
| *Plaintiff*, | § § | |
| | § | CIVIL ACTION NO. 4:22-cv-3469 |
| v. | § § | |
| **WALLER-HARRIS ESD NO. 200 AND TOMMY EUGENE ALBERT,** | § § § | JURY TRIAL DEMANDED |
| | § § | |
| *Defendants*. | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, CHRISTOPHER LEE TORMEY (hereinafter "Plaintiff"), by and through his undersigned counsel and files this First Amended Complaint against Defendant Waller-Harris ESD No. 200 (hereinafter "Defendant") under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq.* and would respectfully show the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains of retaliation under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e, *et seq*.

3. This action seeks compensatory damages, punitive damages, lost wages (past, present, future), emotional distress, mental anguish damages, taxable court costs, pre-judgment and post judgment interest, and attorney's fees.

### PARTIES

4. Plaintiff, Christopher Lee Tormey, is an individual citizen of the State of Texas.

1

5. Defendant, Waller-Harris Emergency Services District Number 200, a governmental organization organized as authorized by the Texas Constitution, may be served by delivering a copy of this First Amended Complaint to the Emergency Services District Director at Waller-Harris ESD No. 200, 540 Ellen Powell, Prairie View, Waller County, Texas 77445.

6. This Amended Complaint does not include Tommy Eugene Albert as a Defendant in the lawsuit.

## JURISDICTION

7. The Court has original jurisdiction over the lawsuit because the suit arises pursuant to 28 U.S.C. § 1311, as it involves federal question jurisdiction under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.*

## VENUE

8. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this state, within the jurisdiction of this Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff has met all conditions precedent to the filing of this action.

10. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC).

11. Plaintiff filed his Original Complaint within ninety (90) days after receiving a notice of the right to sue from the EEOC. A copy of the notice of the right to sue is attached as Exhibit 1.

FACTS

12. Plaintiff began his employment with the Defendant on February 9, 2020 as a firefighter and emergency medical services provider.

13. Plaintiff's job duties included: Firefighter/Emergency Medical Technician, responsible for safely responding to and performing assigned duties at all fire suppression incidents and other emergencies, operating assigned apparatus equipment and emergency medical equipment, and assisting with records and reports associated with fire and emergency medical calls.

14. In or around September 2020, Plaintiff became aware of sexual misconduct towards and sexual assault of the Plaintiff's girlfriend by a colleague in the local emergency services community.

15. This colleague is named Robert McCabe ("McCabe").

16. McCabe groomed the Plaintiff's girlfriend for months.

17. At the time of the events giving rise to this suit, the Plaintiff and his girlfriend lived together.

18. As McCabe increased his grooming efforts, colleagues and co-workers began to notice the sexual misconduct.

19. Colleagues noticed McCabe inappropriately grabbing Plaintiff's girlfriend's knee.

20. An anonymous texter told the Plaintiff that McCabe was intentionally pursuing the Plaintiff's girlfriend in a disturbing and bizarre scheme.

21. The anonymous texter would not come forward because s/he was afraid s/he might be terminated and afraid of how McCabe would react.

22. In September 2020, the Plaintiff's girlfriend informed the Plaintiff that McCabe had previously entered her bedroom at the emergency station in the middle of the night and "forced himself" on her.

23. The Plaintiff made an official complaint of sexual misconduct/assault against McCabe on behalf of his girlfriend with Jimmie Orsak, the Defendant's Interim District Chief, in September 2020.

24. Based on knowledge and information, the Defendant did not investigate the complaint of sexual misconduct/assault.

25. Several high ranking officials in both the Defendant organization and the related emergency medical services department were informed of Plaintiff's concerns and they decided to call a meeting in lieu of conducting an investigation.

26. In September 2020, the Plaintiff's girlfriend provided a written account to the Plaintiff about what happened during the time period of the sexual misconduct/assault.

27. In or around late September 2020, a meeting was held between the Plaintiff's girlfriend, McCabe, and relevant professional supervisors.

28. Also in or around late September 2020, the Plaintiff and his girlfriend were also called into a meeting with supervisors.

29. The Plaintiff's direct supervisor, Robert Frankovich, did not attend this meeting because he was not aware of it.

30. The Plaintiff's direct supervisor should have attended this meeting, due to the fact that the supervisor had firsthand knowledge about the topics to be discussed in the meeting.

31. At the meeting, former ESD No. 200 Commissioner Tommy Albert stated that at least one person would be fired that day, effectively silencing the meeting participants in fear for their jobs.

32. At the meeting, the Plaintiff's girlfriend denied all of her allegations of sexual misconduct/assault due to the fear of being retaliated against and losing her job.

33. Because the Plaintiff's girlfriend decided to recant her initial allegations, the Plaintiff refused to speak out at the meeting about the sexual misconduct/assault to protect his girlfriend.

34. When the Plaintiff went to report the despicable sexual misconduct/assault he was engaged in protected Title VII activity.

35. Plaintiff refused to speak in the meeting with his girlfriend present and was accused of refusing to cooperate.

36. Because the Plaintiff's girlfriend retracted her allegations, the Plaintiff was also accused of making false accusations against McCabe.

37. The morning after the meeting, Plaintiff was wrongfully terminated.

38. The real reason the Plaintiff was terminated from his employment was because he engaged in a protected activity.

39. Because the Plaintiff engaged in a protected activity, the Defendant terminated him.

40. Individuals employed by the Defendant made several threats, saying they would terminate individuals who would confirm the Plaintiff's statements.

41. Those individuals employed by the Defendant also directed other employees to not speak to Plaintiff. That directive predisposed employees to remain silent on the issues and not come forward. No one assisted Plaintiff in reporting McCabe's despicable actions.

42. Robert McCabe, who was the subject of the sexual misconduct/assault allegations, threatened to kill the Plaintiff. Plaintiff became aware of this threat when McCabe's co-workers warned the Plaintiff about McCabe's intentions. It was suggested that Plaintiff should leave town until "all this died down."

43. Plaintiff was qualified to do his job at the time of his firing.

44. Plaintiff was a model employee and had no prior employment issues.

45. Defendant provided no legitimate business reason to terminate the Plaintiff, or the provided reason for termination was pretext for retaliation based on engaging in a protected activity.

46. Tommy Albert told people that the Plaintiff was fired for saying that he is going to "kill everyone at Station 6."

47. McCabe threatened individuals if they did not fire the Plaintiff.

48. This ordeal has had a significant and detrimental impact on the Plaintiff's reputation and professional marketability.

49. At the time the Plaintiff was terminated, no investigation had been done to determine the veracity of Plaintiff's complaint or his girlfriend's allegations.

50. The Defendant, not wanting to take responsibility or exercise due diligence, engaged in a cover-up that has significantly affected the Plaintiff's professional reputation and ability to obtain a job in a similar field.

51. The result of the rumors surrounding Plaintiff's termination have led to several fire districts "blacklisting" the Plaintiff, severely affecting his quality of life and his ability to obtain a job.

52. The firefighting community is a close knit group, and a complaint such as the one initiated by the Plaintiff is considered to be the "wrong thing to do," even if ethically, it is the "right thing to do."

53. If the Plaintiff had not done the right thing and made the complaint, he would still be employed by the Defendant.

54. The Defendant terminated the Plaintiff based on illegal retaliation for engaging in a protected activity covered under Title VII.

## RETALIATION UNDER 42 U.S.C § 2000e, *et. seq.*

55. Plaintiff incorporates the allegations made in Paragraphs 11 to 51 as if they are fully included herein.

56. Title VII prohibits employers from retaliating against employees for asserting their rights, also known as engaging in a protected activity.

57. Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by Title VII 42 U.S.C. § 2000e, *et seq*.

58. Plaintiff was an employee within the meaning of Title VII 42 U.S.C. § 2000e, *et seq.*

59. Defendant retaliated against the Plaintiff by terminating him based on engaging in a protected activity.

60. To establish a prima facie case of retaliation Plaintiff must show that "(1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action." *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007).

61. Had Plaintiff not engaged in the protected activity, he would still be employed by the Defendant.

62. Defendant is an employer within the meaning of Title VII, is engaged in an industry affecting commerce, and has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. At the time of Plaintiff's unlawful discharge, Defendant employed thirty-five (35) full-time employees.

63. As a direct and proximate result of the Defendant's conduct that violated Title VII, 42 U.S.C. § 2000e, *et seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorney's fees and costs.

64. Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## DAMAGES

65. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages and commissions, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## ATTORNEYS' FEES AND COSTS

66. Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## JURY TRIAL DEMANDED

67. Plaintiff demands a trial by jury for all issues triable.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

    a. Back pay;

    b. Pre-judgment interest on back pay;

    c. Front pay;

    d. Compensatory damages, including but not limited to emotional distress;

    e. Punitive damages;

    f. Injunctive and affirmative relief;

    g. Lost benefits;

    h. Attorney's fees and costs, and

    i. Such other and further relief, at law or in equity, general or special, to which Plaintiff may show he is justly entitled.

WHEREFORE, Plaintiff requests compensatory damages, punitive damages, and reasonable attorney fees from Defendant pursuant 42 U.S.C. § 2000e, *et seq.*, and any other

applicable authority (statute/law, etc.), to be proven at the time of trial for all compensatory damages, punitive damages, and attorney's fees and costs along with any other relief that this Court finds reasonable under the circumstances.

DATED: May 17, 2023.

        COANE AND ASSOCIATES, PLLC

        By: /s/ *Susan H. Soto*
        Susan H. Soto, M.Ed., J.D.
        Email: susan.soto@coane.com
        S.D. Tex. # 1812015
        TX Bar # 24076707
        Bruce A. Coane
        Email: bruce.coane@gmail.com
        S.D. Tex. # 7205
        TX Bar # 04423600
        Coane and Associates, PLLC
        5177 Richmond Ave., Suite 770
        Houston, TX 77056
        Telephone: 713-850-0066
        Facsimile: 713-850-8528

        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing document on all counsel of record by filing the same with the Court's CM/ECF electronic filing system on May 17, 2023.

        /s/ *Susan H. Soto*
        Susan H. Soto